AM Santos, Esq.
AM SANTOS LAW, CHTD.
Nevada Bar No. 11265
2620 Regatta Drive Suite 102
Las Vegas, NV 89128
Telephone: 702-560-2409
Facsimile: 702-543-4855
tony@amsantoslaw.com
Attorney for Plaintiffs

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**
******

| | |
|---|---|
| ZOHA DEVELOPMENT, LLC, a Nevada limited liability company; RONALD SASSANO, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>MCIG, INC, a Nevada corporation; SCALABLE SOLUTIONS L.L.C., a Nevada limited liability company; MICHAEL HAWKINS, an individual; CARL G. HAWKINS, an individual; PAUL ROSENBERG, an individual; DOE Individuals 1-10; and ROE Entities I-X<br><br>Defendants. | Case No.  2:18-cv-79<br><br>**RESPONSE TO DEFENDANTS' MOTION TO DISMISS** |

Plaintiffs, by their attorney, AM Santos of AM Santos Law, CHTD, hereby submit this Response or Opposition to Defendants' Motion to Dismiss.

**I.     STANDARDS OF REVIEW.**

Respectfully, Plaintiffs presume the Court need not review yet another recitation of factors and case law as to the Standards of Review for dismissal based on the

insufficiency of pleadings.  Moreover, for the most part, Plaintiffs do not *substantively* dispute Defendants' summary of same, in their Motion to which the instant response is directed. Plaintiffs' *conclusions* however, (subsequent to applying said factors and standards here) diverge (predictably and reciprocally so) from Defendants' such that from the non-moving parties' vantage, the Complaint, and its allegations (and those facts a set forth therein) squarely oblige, and faithfully satisfy the operative pleading standards for each and every claim, just as contemplated by the controlling cases in this Circuit. (*Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *Williams* v. *Gerber Prods. Co.,* 552 F.3d 934, 938 (2008); *Twombly,* 550 U.S. 544 (2007).  In deference to the Court's time and for the sake of judicial economy, Plaintiffs submit that movants' *mostly even-handed* discussion of same, suffices for the record.

Thus, applying *Ashcroft,* and its presumption of veracity and mandate of plausibility, Plaintiffs (and present counsel) are convinced that the pleadings suffice and the Complaint, in its present form, deserves adjudication on the merits just as *Ashcroft* intended in these circumstances.  *Ashcroft* 129 S. Ct. at 1950. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *BellAtl. Corp.* v. *Twombly,* 550 U.S. 544, 556 (2007) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974)).

Similarly, to the extent that any decision on this matter rests in any substantive manner on facts outside the pleadings,  Plaintiffs rely on the Court thorough and

intimate familiarity with the requisite summary judgment standards in this District, Circuit and State.[1]

## II. FED R. CIV. P. 9(B) DOES NOT WARRANT DISMISSAL OF THIS ACTION.

Defendants posit that Plaintiffs have failed to comply with Fed. R. Civ. P. 9(b) by not pleading fraud-based claims with sufficient particularity. Though they don't explicitly say so, , it appears safe to assume that Defendants would agree that Rule 9(b) only applies —if at all— to those causes of action *sounding in fraud.* (e.g., breach of contract, covenant of good faith and fair-dealing, unjust enrichment). These *non-fraud-dependent* clauses arise in part, from acts, deeds or omissions not otherwise *dependent* on the fraudulent conduct or scheme as alleged by plaintiff. For example, the breach contract claim rests on Plaintiff's assertion that Defendant(s) (MCIG, through its officers and directors failed to perform in full as called for by the bargain they entered into with Plaintiffs.

This is so regardless of the apparent nefarious motives as alleged by Plaintiffs and despite that said breach coincided with the fraudulent purposes as described in the Complaint. (To wit, the Complaint alleges the Defendants acted together to prevent, preclude or impede Plaintiffs from selling their mCig shares so as to protect and preserve the market price for shares and maximize their personal gain and did so under

---

[1] Summary judgment is appropriate only when the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). To successfully rebut a motion for summary judgment, the non-moving party need only point to facts supported by the record which demonstrate a genuine issue of material fact. *Reese* v. *Jefferson Sch. Dist. No. 14J,* 208 F.3d 736, 738 (9th Cir. 2000).

false pretense or ruse.  These non-fraud reliant claims, that is, those *not necessarily sounding in fraud,* are subject to simple notice pleading standards as described by Federal Rule of Civil Procedure (FRCP) 8(a).  *See, e.g., Vess* v. *Ciba-Geigy Corp. USA,* 317 F.3d 1097, 1104 (9th Cir. 2003) (noting that Rule 9(b) "does not require that allegations supporting a claim be stated with particularity when those allegations describe non-fraudulent conduct").

Notwithstanding, (and contrary to Defendants' assertions,) Plaintiffs believe their claims as pled, and the litany of facts and details included in the Complaint pass Rule 9(b) muster.   But in deference to any difference of opinion the Court might have, Plaintiffs submit, that under the operative circumstances at hand, Plaintiffs should be entitled to a relaxed pleading standard (at least in the near term until some modicum of discovery might ensue affording Plaintiffs to  access to additional information Defendants are suspect of jealously guarding for fear of exposure to current or prospective claimants and regulatory sanction).

**A.  Fed. R. Civ. P. 9(b) Standards.**

As Defendants hammer home in their motion, [w]hen alleging fraud, a party "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).  "A pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so [that] a defendant can prepare an adequate answer from the allegations." *Philips Med. Capital, LLC* v. *Med. Insights Diagnostics Ctr., Inc.,* 471 F. Supp. 2d 1035, 1044 (N.D. Cal. 2007). Thus, "'averments of fraud must be accompanied by *"the who, what, when, where, and how"* of the misconduct charged.'" *Multifamily Captive Group, LLC v. Assurance Risk Managers, Inc.,* 578 F. Supp. 2d

1242, 1249 (E.D. Cal. 2008) (quoting *Vess,* 317 F.3d at 1106) (internal citation omitted) (emphasis added). In other words, "[statements of the time, place and nature of the alleged fraudulent activities must be included in the complaint." *Arroyo* v. *Wheat,* 591 F. Supp. 136, 139 (D. Nev. 1984) (District Judge Edward C. Reed, Jr.). The plaintiff is further required to "'set forth what is false or misleading about a statement, and why it is false.'" *Multifamily Captive Group, LLC,* 578 F. Supp. 2d at 1249 (quoting *Vess,* 317 F.3d at 1106) (internal citation omitted). The plaintiff must also identify the role that each defendant played in committing the fraud. *Id.* (citing *Swartz* v. *KPMG LLP,* 476 F.3d 756, 765 (9th Cir. 2007)); *Arroyo,* 591 F. Supp. at 139. Thus, as Plaintiffs read the allegations, they seem, in total, more than sufficient so as to place Defendants on notice of the alleged fraud-based claims so as to permit them to answer.

The Complaint clearly describes the in fairly, extensive detail, the precise nature and objective behind the ruse or fraudulent scheme. Where possible and when evident, it identifies the offensive conduct or disingenuous, misleading acts and in some cases, misdirection, undertaken by these Defendants; when these events happened; and each of the participants and how they participated in the scam or fraud, and further, defines the relationships forming the basis for the fraud and agency and/or alter ego claims. To wit, the key operative facts or allegations describing these details are faithfully set forth (in key part) below[2]:

> 59. Although Defendant(s) did in fact issue to Plaintiff(s) some of the stock they were obliged to, they have since engaged in a systematic effort to thwart any effort by Plaintiff(s) to sell these shares over the market or otherwise.
>
> 60. To that end, Defendant(s) have concocted a series of ruses or artifice(s) calculated or devised to protect and manipulate the market for MCIG's common stock to the direct detriment of Plaintiff(s).

---

[2] From pages 10-16 of the Complaint.

61. For example, on or about June 6, 2017 via email, MCIG, through Rosenberg and R. Hawkins, told Plaintiff Sassano (and several MCIG employees with MCIG shares) that MCIG management was trying to push the company to new levels and further, attempted to dissuade Plaintiff Sassano and MCIG employees with MCIG shares, from selling over the market so as to facilitate reach these new levels.

62. In at least one email, MCIG, through Rosenberg and M. Hawkins wrote Plaintiff Sassano the following: You know how important the share price for [the] financial health of the Company is suggesting that any sales over the market might adversely affect the very financial health of MCIG.

63. In another scheme designed to prevent or preclude Plaintiff(s) from selling their shares, MCIG, through Rosenberg and M. Hawkins, notified Plaintiff Sassano of a newly adopted "policy" mandating that each employee or shareholder provide monthly account statements to management for any securities account holding MCIG shares and further, mandating that said individuals sign leak-out agreements.

64. The apparent objective of said policy, was to limit sales (and thus the supply) of the stock on the market so as to affect its price on the market.

65. Said conduct was no more than a thinly veiled ruse and an attempt to interfere with the free and fair operation of the market for these securities and appears precipitously close to bordering on market manipulation by a public company officer.

66. In and about June of 2017, Rosenberg attempted to cajole Plaintiffs into signing a sign a leak-out agreement and recruited others (intermediaries) to reach out to Plaintiff Sassano and persuade him accordingly.

67. This was a blatant effort to limit sales of any MCIG stock and control or manipulate the market for same.

68. Moreover, Defendant Rosenberg asked that Plaintiffs not sell any stock into the market "right now" as MCIG was working with an investment banker referred to by Defendant(s) as "Michel".

69. Defendant(s) claimed that "Michel" was sitting on the bid price, through his family office to help support the stock price.

70. Upon information and belief, Defendant Rosenberg expressed to several others, considerable consternation and concern as to Plaintiffs' prospective sales of MCIG stock over the market.

71. Mr. Rosenberg further elaborated, admonishing Mr. Sassano that: any selling would damage the Company's stock, and the Company would lose [the stock promoter] and the benefit of his efforts to support the bid.

72. Plaintiffs refused, thus did not sign the leak out agreement.

73. These statements, when viewed through the lens of the June 6 email, suggest conduct on the part of MCIG management likely to run afoul of state and federal securities laws and the rules and regulations as promulgated thereunder.

74. When these efforts failed to dissuade Plaintiff(s) from exercising the right to sell the subject securities; when Defendants could not persuade or cajole Plaintiffs to hold off on selling stock, MCIG, Rosenberg, and M. Hawkins employed yet another scheme or artifice, and adopted yet another pretext.

75. This time, on June 19, 2017, Rosenberg notified Plaintiff(s) by way of email, that MCIG legal counsel had revisited the company's filings as an issuer reporting with the Securities and Exchange Commission (the "SEC") in tandem with the MCIG's disclosure policies and protocols for identifying issuer affiliates or control person(s).

76. Rosenberg claimed that MCIG legal counsel had suggested that all key personnel of GCI should henceforth be listed as affiliates of MCIG.

77. Of course, by doing so, MCIG, M. Hawkins and Rosenberg could secure the objective they intended from the outset. Namely, they could thwart or limit Plaintiffs from rightfully selling their MCIG shares.

78. On July 21, 2017, MCIG, through Rosenberg, emailed Plaintiffs cc'ing multiple third-parties including securities intermediaries (Plaintiffs' securities broker and brokerage firms and MCIG's transfer agent) in a blatant effort stop or certainly hinder or delay Plaintiff(s) efforts to sell any MCIG shares over the market.

79. That email reads in part as follows:

*Please be advised that it is the Company's intention to list Ronald Sassano as a company [MCIG] insider in its upcoming Annual Report Form 10-K filing. While Mr. Sassano does not qualify as an "Affiliate" insider pursuant to Rule 144 of the Securities Act of 1933, we have concluded that Mr. Sassano may be aware of material non-public information (and, as such, any trades made would be subject to the limitations of insider trading federal limitations). We recently learned that Ronald Sassano was the managing director of MacMas Real Estate and Agriculture Private Equity Opportunity 2 Fund, LLC, which the Company contracted to manage its subsidiary, Grow Contractor's Inc., which represented approximately 33% of the Company's total income for FY 2017. As such, the subsidiary and its management would have ongoing access to material non-public information. I believe Mr. Sassano may have failed to disclose that he was the managing director and a beneficiary of MACMAS when providing information to obtain releases of his stock under Rule 144. We rescind all documents signed by the Company authorizing the*

*prospective sale of any stock under Rule 144 that does not list him as possessing material non-public information.*

80. By mischaracterizing Plaintiff as a Schedule 16 insider or affiliate, Defendants have harmed Plaintiffs without justification or cause.

81. In the last Form 10-K Annual Report for the fiscal year ended April 30, 2017, Defendants blatantly misrepresent Plaintiff Sassano's status as a shareholder.

82. Defendants have willfully abused and contorted Section 16 (15 USCS §78p) of the Securities Exchange Act of 1934, as amended (the "Exchange Act").

83. They have done the same with respect to Title 17, Chapter II, Part 240)240.10b5-l) and those provisions addressing the concept of Non- Statutory Insider(s).

84. Defendants' conduct has resulted in significant harm to Plaintiffs and Defendants' abject refusal to mitigate said harm, has compounded matters.

85. Indeed, from the outset, Defendants MCIG, M. Hawkins and Rosenberg conspired to cajole and induce Plaintiffs into accepting the securities at issue as consideration for the bargain, lulling Plaintiffs into believing that they might be sell said securities without impedance, save for those rules and regulations germane to the resale of restricted securities.

86. Plaintiffs relied on Defendants' representations, unaware of intentionally surreptitious omissions, namely, that Defendants would never allow Plaintiffs to sell said securities except at the whim and pleasure of M. Hawkins and Rosenberg.

87. Meanwhile, upon information and belief, M. Hawkins and Rosenberg have each enjoyed a personal pecuniary benefit from the sale of MCIG's stock over the market whilst impeding any sales form its employees and other shareholders, including Plaintiffs, thus engaging in brazen self-dealing to the detriment of Plaintiffs.

In each of the fraud based causes of action Plaintiffs allege as a result of the above itemized facts that:

1) Defendants M. Hawkins, C. Hawkins, Rosenberg and MCIG perpetrated a scheme and artifice to misrepresent the nature of their dealings and transactions, all with the purpose of inducing Sassano and Zoha into entering into the Agreements and usurping unfettered control Scalable and its business and clients.

2) M. Hawkins, C. Hawkins, Rosenberg and MCIG lulled Plaintiffs into accepting warrants, options or shares (securities) as payment, which securities Defendants led Plaintiff to believe could be sold over the market, subject only to a six-month holding period. 23. From the outset, they never intended to allow, Plaintiffs to sell these shares and never intended to honor the options or warrants.

3) Defendants M. Hawkins, C. Hawkins, Rosenberg and MCIG willfully filed one or more periodic filings (Form 10-K) and other SEC filings (intermittent or current) which they knew to be false, misrepresenting or mischaracterizing Plaintiffs and their respective status in a concerted effort to prevent, preclude or restrict their ability to sell their shares.

4) In willful and blatant disregard of corporate governance protocols and in blatant disregard for the truth, these Defendants falsely claimed Ron Sassano was a non-affiliate, or statutory insider, and filed false and misleading statements specifically to prevent Plaintiffs from selling so as to manipulate, protect or maintain the market for MCIG's common stock.

5) M. Hawkins, C. Hawkins, Rosenberg and MCIG made or authorized these SEC filings and/or certified their accuracy notwithstanding their knowledge to the contrary.

6) They had, as their ulterior purpose, to use their dominance and control over MCIG and its market for shares for their own ends and at the expense of Plaintiffs' interests.

7) Defendants M. Hawkins, C. Hawkins, Rosenberg and MCIG, acting in their internal controls provisions mandated by federal law and those applicable rules and regulations as promulgated by the SEC. Specifically, these Defendants aided and abetted violations of Section 17(a)(2) of the Securities Act [15 U.S.C. §77q(a)(2)], in violation of Section 15(b) of the Securities Act [15 U.S.C. §77o(b)]. In so doing, these Defendants breached their fiduciary duties to Plaintiffs and did so purposefully and specifically to so as to harm these Plaintiffs.

8) Moreover, said Defendants directly engaged in (and/or aided and abetted each other, in conduct resulting in) violations of Section 10(b) of the Exchange Act [15 U.S.C. §78j(b)], and Rule 10b-5(b) thereunder [17 C.F.R. §240.10b-5(b)], in violation of Section 20(e) of the Exchange Act [15 U.S.C. §78t(e)].

9) They did so willfully, intentionally, and maliciously so as to harm these Plaintiffs.

10) Finally, Defendants M. Hawkins, C. Hawkins, Rosenberg and MCIG, in willfully filing false periodic and intermittent reports with the SEC,

        directly engaged in and/or aided and abetted violations of 13(b)(2)(a) and (b), and 15(d) of the Exchange Act

11)   They failed in making and keeping (or otherwise falsified) books, records, and accounts, which, in reasonable detail, accurately and fairly reflect the transactions and disposition of the issuer and its assets particularly in relation to the Issuer's accounting for Plaintiff's securities and interests.

12)   They failed in devising and maintaining sufficiently accurate and truthful (or otherwise falsified) systems of internal accounting controls. In so doing, these Defendants breached their fiduciary duties to Plaintiffs and did so purposefully and specifically to so as to harm these Plaintiffs.

(As to those causes of action not available to private parties, the Plaintiffs recognize that there is no private right of action under 13(b)(2)(A) and (B) and Section 15(d) of the Securities Exchange Act of 1934 [15 U.S.C. § 78m(b)(2)(A) and (B) and 15 U.S.C. § 78o(d); Section 20(e) of the Securities Exchange Act of 1934 [15 U.S.C. § 78t(e);  Section 17(a) of the Securities Act of 1933 [15 U.S.C. § 77q(a)] and Section 15(b) of the Securities Act of 1933 [15 U.S.C. § 77o(b)] and therefor no separate causes of action are listed here.  The violations of said provisions are included to underscore the reckless extent to which these Defendants acted at risk of regulatory action, to prevent Plaintiffs from selling those shares they had and receiving those shares they were still owed.)

### III. AS OFFICERS AND DIRECTORS OF A REPORTING NEVADA CORPORATION (AND LEGAL COUNSEL TO THE COMPANY IN THE CASE OF CARL HAWKINS), EACH OF THE DEFENDANTS ARE AGENTS OF THE CORPORATE DEFENDANT AND KNOWLEDGE IS IMPUTED TO THEM.

It is well-settled that, under the doctrine of imputed knowledge a principal is chargeable with and is bound by the knowledge or notice received by his or her agent while the agent is acting within the scope of his or her authority. The law imputes the knowledge to the principal, regardless of whether the agent actually communicates the knowledge to the principal. The principal, furthermore, is bound by the fraudulent or negligent acts of its agents acting within the

scope of employment; notice of these wrongful acts is likewise imputed to the principal. *River Colony Estates Gen. P'ship v. Bayview Fin. Trading Group, Inc.*, 287 F. Supp. 2d 1213, 1226 (S.D. Cal. 2003) (internal citations omitted) (emphasis added); see also *Strohecker v. Mut. Bldg. & LoanAss'n of Las Vegas*, Nev., 55 Nev. 350, 355, 34 P.2d 1076, 1077 (Nev. 1934) (noting that a corporation acquires knowledge through its officers and agents). "The purpose of the rule is to protect third parties who deal with an agent by allowing the third parties to assume that the agent will faithfully communicate with his or her principal." *River Colony Estates Gen. P'ship*, 287 F. Supp. 2d at 1226. (emphasis added); see also *In re Illinois Valley Acceptance Corp*, 531 F. Supp. 737, 740 (C.D. 111. 1982) (noting that, "[generally, knowledge of corporate records and documents is imputed to all directors," and that directors are liable for misconduct committed by their co-directors where they acquiesce to the misconduct) (emphasis added); *Nobels v. Farmers Union Trading Co.*, 216 P.2d 925, 927 (Mont. 1950) (explaining that a corporation "is not a person," and thus, "acts through its board of directors and officers"); *Rugger v. Mt. Hood Elec. Co.*, 20 P.2d 412, 418 (Ore. 1933) ("A corporation acts only through its board of directors[.]").

Thus, each of these individuals were also acting as agents or subagents for MCIG (thus implicating their culpability for the wrongdoing alleged in the Complaint). In this case, there are no minutes of any Board of Directors' meeting of the company reflecting dissent by one or more officers or directors or any other records publicly available suggesting otherwise. By implication then, they each approved of, acquiesced to, assented and/or ratified the the subject fraud. Plaintiffs meet the heightened pleading requirement of Fed. R. Civ. P. 9(b).

### IV. PLAINTIFFS ARE ENTITLED TO A RELAXED PLEADING STANDARD TO THE EXTENT THE COMPLAINT DOES NOT MEET THE HEIGHTENED PLEADING REQUIREMENTS OF RULE 9(B).

At this time, Plaintiffs are not able to plead fraud with any more particularity, as most of the facts which demonstrate the fraudulent scheme are within the Defendants' peculiar knowledge and possession. Plaintiffs believe that if they are permitted to conduct the necessary discovery, they could then move to amend their complaint and allege fraud with the particularity required of F.R.C.P. 9(b) should this Court find that in its present form, it does not meet the standard.

Precedent permits a relaxed pleading standard for fraud-based claims where the defendants are in sole possession of the relevant facts. Specifically, this Court has consistently recognized that the heightened pleading standard is "relaxed 'with respect to matters within the opposing party's knowledge[, and that, i]n such situations, plaintiffs can not be expected to have personal knowledge of the relevant facts.'" *Nevada ex rel. Steinke v. Merck & Co., Inc.*, 432 F. Supp. 2d 1082, 1089 (D. Nev. 2006) (Hon. J. McKibben) (quoting *Neubronner v. Milken,* 6 F.3d 666, 672 (9th Cir. 1993)); see also *Rocker v. KPMG LLP*, 122 Nev. 1185, 1193-96, 148 P.3d 703, 708-10 (2006), overruled on other grounds by *Buzz Stew, LLC v. City of North Las Vegas*, 124 Nev. Adv. Op. No. 21, 181 P.3d 670, 672 n.6 (Apr. 17, 2008), (adopting "the relaxed standard of pleading utilized by the federal courts under [Fed R. Civ. P.] 9(b) when the facts necessary for pleading with particularity 'are peculiarly within the defendant's knowledge'") (quoting *Neubronner,* 6 F.3d at 672). Moreover, "Rule 9(b)'s particularity requirement is relaxed in instances of corporate fraud where the facts supporting the allegation of fraud are exclusively within the defendants' possession." *Estate of Migliaccio v. MidlandNat'l Life Ins. Co.,* 436 F. Supp. 2d 1095, 1106 (C.D. Cal. 2006) (emphasis added). When necessary, factual allegations for pleading fraud can be founded upon information and belief. *Neubronner, 6 F.3d at 672; Celador Int'l Ltd. v. Walt Disney Co*., 347 F. Supp. 2d 846, 855 (C.D. Cal. 2004).?

Plaintiffs drafted the factual allegations in the Complaint in accord with the notice pleading standards of and the heightened pleading requirement of Fed. R. Civ. P. 9(b). But Plaintiffs did not have access to those documetns and records including communications Defendants have.  Thus, should the Court be inclined to rule in favor of Defendants on the 9(b) issues, Plaintiffs would seek the Court's indulgence by way of a continuance on any definitive order as such and request a continuance pursuant to Fed. R. Civ. P. 56(f).

Pursuant to Fed. R. Civ. P. 56(f), If a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: deny the motion; order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or issue any other just order. Fed. R. Civ. P. 56(f).

1  In other words, "[t]o warrant a denial or a delay in judgment pursuant to Rule 56(f), the requesting party must show (1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery, (2) the facts sought exist, and (3) the sought-after facts are essential to oppose summary judgment." *Davis v. Centex Homes*, Case No. 2:08-CV-01360- LRH-GWF, 2009 WL 1067216, at *2 (D. Nev. Apr. 21, 2009) (Hon. J. Hicks). "'The purpose of subdivision (f) is to provide an additional safeguard against an improvident or premature grant of summary judgment...*Davis,* Case No. 2:08-CV-01360- LRH-GWF, 2009 WL 1067216, at *1 (quoting *10B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure* § 2470 (3d. ed. 1998)) (emphasis added). So long as the additional facts sought are not irrelevant or futile-which, in this case, they are not-Rule 56(f) motions should be granted "fairly freely where summary judgment is sought very early on in a case, before any opportunity has been had for discovery. *Davis,* Case No. 2:08-CV-01360- LRH-GWF, 2009 WL 1067216, at *2 (quoting *Burlington N. Santa Fe. R.R. v. Assiniboine & Sioux Tribes of the Fort Peck Reservation, Montana*, 323 F.3d 767, 773 (9th Cir. 2003)) (emphasis added).

In this case, Plaintiffs genuinely believe they've aggregated sufficient facts, evidence and indicia to prevail in this matter but Plaintiffs are certain, that they can secure more information to support or prove their claims with the benefit an abbreviated discovery process. Therefore, Plaintiffs request that this Court continue a final dispensation or ruling and allow for discovery to be undertaken, depositions taken, and affidavits obtained if the Court is not otherwise persuaded that the Complaint is adequately pled.

R.  Plaintiffs Request Leave To Amend.

Assuming, arguendo, that this Court determines that some or all of defendants' arguments are meritorious- Plaintiffs should be granted leave to amend the Complaint to remedy any defects as determined by the Court. "As with Rule 12(b)(6) dismissals, dismissals for failure to comply with Rule 9(b) should ordinarily be without prejudice. '[L]eave to amend should be granted if it appears at all possible that the plaintiff can correct the defect.'" *Vess*, 317F.3datll08 (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 701 (9th Cir. 1988)) (emphasis added); see also

1   *Klein,* 595 F. Supp. 2d at 1163 (noting that leave to amend should be freely given); *Estate of Miglaccio*, 436 F. Supp. 2d at 1099 ("As a general rule, leave to amend a complaint which has been dismissed should be freely granted.") (emphasis added); *Graziose* 202 F.R.D. at 642-43 (requiring plaintiffs to file an amended complaint to meet the heightened pleading standards, and including an extensive list of examples of what specifics should be included in the amended complaint).

## V. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss should be denied in its entirety; or should the Court nt be persuaded, Plaintiffs seek alternative relief as requested.

**A.M. SANTOS LAW, CHTD.**

_____
Antony M. Santos, Esq.
Nevada Bar No. 11265
2620 Regatta Drive Suite 102
Las Vegas, Nevada 89128
Telephone: (702) 560-2409
Facsimile: (702) 543-4855
tony@amsantoslaw.com